UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04 11598WGY

HARVEY STEWART
        Plaintiff

v.

ANTHONY J. PRINCIPI, SECRETARY,
UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS
        Defendant

**PLAINTIFF, HARVEY STEWART'S MEMORANDUM IN OPPOSITION TO THE
DEFENDANT'S MOTION TO DISMISS**

## I.    Summary of Argument

The Defendant is not entitled to have this civil action dismissed as

untimely.  Pursuant to 29 C.F.R., § 1614.407(a), the Plaintiff's complaint was

timely filed within ninety days of when the Plaintiff received notice of the United

States Department of Veterans Affairs' final action in this matter.  The Plaintiff

was not required to wait one hundred-eighty days from when he filed his appeal

with the Equal Employment Opportunity Commission to file suit in this matter,

because he timely removed his notice of appeal, without pursuing his appeal,

and filed this civil action before ninety days had passed from the time of the

United States Department of Veterans Affairs' final action.

The Court must consider all of the actions addressed in the Plaintiff's

complaint because they are all part of a continuing scheme of retaliation, which

has created a hostile work environment for the Plaintiff.  None of the actions

addressed in the Plaintiff's complaint may be dismissed as untimely, because the

acts are not discrete from one another; they are all intertwined together as part of the same continuing scheme of harassing, retaliatory conduct against the Plaintiff.

## II.     Statement of Facts

### II.A.     Background

The Plaintiff, Harvey Stewart, has worked for the United States Department of Veterans Affairs at its Medical Center in Brockton, Massachusetts since November, 1994.  (Complaint, ¶ 11).  Mr. Stewart came to the Brockton V.A. Medical Center with eleven years of experience in mental health and substance abuse treatment and a Masters Degree of Education in Counseling Psychology.  (Complaint, ¶ 13).

The Plaintiff was hired as a Case Manager in the Brockton V.A. Medical Center's REACH Program, where he worked under the supervision of Robert Hallett from November, 1994 until April, 1999.  (Complaint, ¶ 14).  The Plaintiff's position as a Case Manager in the REACH Program involved providing individual counseling services, anger management and substance abuse treatment groups, and diagnostic psychosocial assessments, as well as actively participating in a multidisciplinary treatment team.  (Complaint, ¶ 15).  The Plaintiff's duties as a Case Manager were consistent with the Plaintiff's education in counseling psychology and his training and experience in substance abuse treatment. (Complaint, ¶ 15).

3

### II.B.    EEO Complaint

During 1998, the Plaintiff approached Sharon O'Leary, an EEO counselor at the Brockton V.A. Medical Center, to complain about his working conditions in the REACH Program and his limited opportunity for advancement within the Veterans Administration.  (Complaint, ¶ 16).  The Plaintiff's supervisor, Robert Hallett, was aware of the Plaintiff's EEO activity.  (Complaint, ¶ 20).

### II.C.    Immediate Undue Scrutiny and Unfair Criticism Followed by False Accusations of Abuse and Job Transfer

After the Plaintiff's meeting with the EEO counselor, Robert Hallett unduly scrutinized the Plaintiff's work and subjected him to unfair criticism.  (Complaint, ¶ 21).  In early April, 1999, Robert Hallett falsely accused the Plaintiff of patient abuse.  (Complaint, ¶ 22).  On April 13, 1999, shortly after making his false accusations against the Plaintiff, Robert Hallett involuntarily transferred the Plaintiff from his chosen position as a Case Manager to a position as a Health Technician in the Brockton V.A. Medical Center's Gastrointestinal Unit. (Complaint, ¶ 24).  In his new position, the Plaintiff was supervised by Robert Hallett's wife.  (Complaint, ¶ 29).  The Plaintiff's position in the Gastrointestinal Unit of the Brockton V.A. was a medical position and did not utilize the skills that the Plaintiff had acquired during his education and employment in the field of counseling psychology.  (Complaint, ¶ 30).

### II.D.    Second Job Transfer

During July, 1999, the United States Department of Veterans Affairs involuntarily transferred the Plaintiff a second time, to the PATH Program, where he has been assigned to work as a Health Technician/Advocate, since that time.

(Complaint, ¶ 31). The Plaintiff's transfer to the Health Technician/Advocate position was unwelcome, demeaning, and inconsistent with the Plaintiff's education, experience, training, and career of choice. (Complaint, ¶ 32).

Robert Hallett has overall responsibility for the PATH Program. (Complaint, ¶ 36). Robert Watts, who is aware of the Plaintiff's 1998 EEO activity, is the Plaintiff's direct supervisor in the PATH Program. (Complaint, ¶¶ 37, 38).

Mr. Watts and the Plaintiff had experienced difficulty working with one another in a prior assignment and their relationship was plagued by hostility. (Complaint, ¶ 39). Robert Hallett was aware of the hostility between Mr. Watts and the Plaintiff when he assigned the Plaintiff to work for Mr. Watts. (Complaint, ¶ 39).

On December 6, 2001, Dr. Charles Swett, a manager in the PATH program, issued a written counseling to the Plaintiff, upon the recommendation of the Plaintiff's immediate supervisor, Robert Watts. (Complaint, ¶ 41). In the written counseling, the Plaintiff was wrongfully accused of refusing to take patients' vital signs. (Complaint, ¶ 42). At the time that the written counseling was issued, taking patients' vital signs was not part of the Plaintiff's job description. (Complaint, 42). However, the Plaintiff did not refuse to take vital signs. (Complaint, ¶ 42).

## II.E.    Hostile and Offensive Work Environment

The Plaintiff has suffered the above-described undue scrutiny and unfair criticism, false accusations of patient abuse, undesirable job transfers, hostile

supervisors, and undeserved written counseling at the hands of two supervisors,

Robert Hallett and Robert Watts, who were both aware of his EEO activity.

(Complaint, ¶¶ 20-24, 31-32, 36-41).  These adverse actions began when the

Plaintiff made his 1998 EEO complaint and continued when Robert Hallett

involuntarily transferred the Plaintiff to work for a hostile supervisor under his

oversight.  (Complaint, ¶¶ 20-24, 31, 37, 39, 41, 43).  Together, Robert Hallett's

and Robert Watts' conduct has created a hostile and offensive work environment

for the Plaintiff.  [Complaint, ¶ 43(h)].  As a result of these unfavorable actions,

the Plaintiff has suffered the adverse effects of a hostile relationship with his

supervisor, an undeserved written counseling, and false accusations affecting his

reputation.  (Complaint, ¶ 43).  In addition, the Plaintiff has been deprived of over

five years of experience in his chosen career, which along with the false

accusations made against him, is severely detrimental to his career prospects.

(Complaint, ¶ 43).

## II.F.    Second EEO Complaint and Proceedings

On December 7, 2001, the Plaintiff initiated a complaint with an EEO

Counselor regarding the retaliatory acts to which he was subjected between

1999 and December, 2001.  (Complaint, ¶ 4, Exhibit 1, Department of Veterans

Affairs Complaint of Employment Discrimination Filed by the Plaintiff).  The

Department of Veterans Affairs issued a final decision on the Plaintiff, Harvey

Stewart's EEO complaint on April 26, 2004, which the Plaintiff received on April

29, 2004.  (Complaint, ¶ 5; Exhibit 2, Notice of Appeal).  On May 25, 2004, the

Plaintiff filed a Notice of Appeal/Petition with the Equal Employment Opportunity

Commission, in order to preserve his right to pursue his retaliation claim.  (Exhibit 2, Notice of Appeal).  The Complainant made no further filings in connection with his appeal to the Equal Employment Opportunity Commission.

On June 1, 2004, Robert J. Barnhart, Director of the Compliance and Control Division, Office of Federal Operations of the Equal Employment Opportunity Commission wrote to the Plaintiff acknowledging his appeal and advising him that the Equal Employment Opportunity Commission would terminate his appeal if he filed a civil action.  (Exhibit 3, June 1, 2004 Letter).  On July 19, 2004, the Plaintiff filed his complaint in the instant matter.  (Exhibit 4, date stamped copy of page 1 of the Complaint).  Shortly thereafter, on July 28, 2004, the Plaintiff's attorney wrote to the Director of the Office of Federal Operations of the Equal Employment Opportunity Commission advising him/her that the Plaintiff filed a civil action and that the Plaintiff understood that the Equal Employment Opportunity Commission's processing of his appeal would terminate with the filing of the Plaintiff's civil action.  (Exhibit 5, July 28, 2004 letter).  On August 12, 2004, the Equal Employment Opportunity Commission wrote to the Plaintiff confirming that his appeal had been terminated with the filing of his complaint in the instant matter.   (Exhibit 6, August 12, 2004 letter).

### III.    Argument

In reviewing a defendant's motion to dismiss a plaintiff's complaint, a court must accept the allegations of the plaintiff's complaint as true and "make all reasonable inferences in favor of the plaintiff[ ]."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  A Court may not order the dismissal of the plaintiff's complaint

"unless it appears beyond a doubt that the [plaintiff] can prove no set of facts in support of [his] claim which would entitle [him] to relief." <u>Feliciano v. State of Rhode Island</u>, 160 F.3d 780, 788 (1st Cir. 1998).

**III.A.  The Plaintiff Exhausted His Administrative Remedies Before Filing Suit.**

Pursuant to 29 C.F.R., §§ 1614.402 and 1614.407, a federal employee who has filed a Title VII complaint and received an unfavorable final decision from his/her employing agency has the option of (a) appealing the decision to the Equal Employment Opportunity Commission, (b) filing a civil action with the appropriate United States District Court, or (c) appealing the decision to the Equal Employment Opportunity Commission and then filing a civil action.  Title 29, Section 1614.402 of the Code of Federal Regulations provides that a claimant seeking to appeal a final action of his/her employing federal agency to the Equal Employment Opportunity Commission must file a notice of appeal within thirty days of when he/she receives the agency's final decision.

Title 29, Section 1614.407 of the Code of Federal Regulations provides that a claimant may file a civil action in the appropriate United States District Court (a) within ninety days of when he/she receives notice of the final action; (b) after one hundred-eighty days have passed from the date of the agency complaint if an appeal has not been filed and final action has not been taken; (c) within ninety days of receiving the Equal Employment Opportunity Commission's decision on an appeal; <u>or</u> (d) once one hundred eighty days have passed from the date of filing an appeal if no final decision has been made by the Equal Employment Opportunity Commission.  29 C.F.R., § 1614.407(a).  The optional

8

"or" language of Section 1614.407 provides a claimant with choices for processing his/her claim: a claimant may file an EEOC appeal, a civil action, or both, as long as he does so within the time periods allowed.  The options provided permit an employee to file a civil action without first pursuing an EEOC appeal.

Title 29, Section 1614.409 of the Code of Federal Regulations provides that a complainant may file suit subsequent to filing an appeal if he/she notifies the Equal Employment Opportunity Commission in writing that he/she has done so.  Filing suit terminates the Equal Employment Opportunity Commission's processing of an appeal.  29 C.F.R., § 1614.409.  Applying 29 C.F.R., § 1614.409 in connection with 29 C.F.R., § 1614.407, a complainant may preserve his/her right to appeal to the EEOC by filing a notice of appeal within the stated thirty-day time period and then terminating said appeal, without pursuing it, by filing a civil action, as long as he/she files the civil action within the permitted ninety-day period.  This option is confirmed by Director Barnhart's June 1, 2004 letter to the Plaintiff in this matter, in which he informed the Plaintiff while he was still well within the initial ninety-day period allowed for filing a complaint, that he could terminate his appeal by filing a complaint.  Director Barnhart's June 1, 2004 letter came months before the Plaintiff would have been permitted to file a civil action pursuant to the one hundred-eighty day provision set forth for persons who file and pursue their appeals with the Equal Employment Opportunity Commission.

The Plaintiff, Harvey Stewart, took advantage of the time allowed for decision-making under the timelines for filing appeals and civil actions, by filing a notice of appeal to preserve his right to appeal to the Equal Employment Opportunity Commission during the shorter, thirty-day time period for such a filing.  The Plaintiff then used the longer ninety-day time period for filing a civil action to decide whether he wanted to pursue an appeal before the Equal Employment Opportunity Commission or a civil action in court.  During said time period, the Plaintiff decided to file suit and filed a civil action in the United States District Court without pursuing his appeal to the Equal Employment Opportunity Commission any further than filing his initial notice of appeal.  Shortly thereafter, the Plaintiff wrote to the Equal Employment Opportunity Commission, pursuant to 29 C.F.R., § 1614.409, removing his appeal.

With the Plaintiff's removal of his appeal pursuant to 29 C.F.R., § 1614.409, the time period that applied to the Plaintiff's civil action was the one the Plaintiff observed: ninety days from when he received notice of the final action of his employing agency.  The Plaintiff was not required to wait one hundred-eighty days from the date of his appeal to file his civil action because his appeal was successfully removed before he took any action to pursue it, under the provisions of 29 C.F.R., § 1614.409.  As such, the Plaintiff's civil action was timely filed within the applicable ninety-day period.

While the Defendant has cited Jones v. Ashcroft, 321 F. Supp.2d 1 (D.D.C. 2004), Martini v. Federal National Mortgage Association, 178 F.3d 1336 (U.S.  App. D.C. 1999), and Jensen v. Frank, 912 F.2d 517 (1st Cir. 1990) in

support of an argument that the Plaintiff was required to wait one hundred-eighty

days to file a civil action, none of these cases govern the Court's decision in this

matter.  Martini v. Federal National Mortgage Association, 178 F.3d 1336 (U.S.

App. D.C. 1999) is unlike the present matter in that it addresses a claimant's

failure to allow the Equal Employment Opportunity Commission one hundred-

eighty days from the date of her initial charge of discrimination with the Equal

Employment Opportunity Commission to process her initial charge.  The instant

matter substantially differs from the facts of Martini v. Federal National Mortgage

Association, 178 F.3d 1336 (U.S.  App. D.C. 1999), in that it addresses the

processing of a claimant's charge of discrimination after it had been pending for

over two years and final action had been taken.

Jones v. Ashcroft, 321 F.Supp. 2d 1 (D.D.C. 2004) differs from the instant

action in that the initial ninety-day period for filing a civil action had long since

passed when the complainant withdrew his appeal from the Equal Employment

Opportunity Commission and filed his civil action.  The Plaintiff in Jones v.

Ashcroft, 321 F.Supp. 2d 1 (D.D.C. 2004) filed his civil action pursuant to 29

C.F.R., § 1614.407(d), a provision allowing a claimant to file a civil action after

one hundred eighty days have passed from the filing of his/her EEOC appeal if a

final decision has not been made on his/her appeal.  Unlike the Plaintiff in Jones

v. Ashcroft, 321 F.Supp. 2d 1 (D.D.C. 2004), the Plaintiff in this matter timely filed

his civil action pursuant to the provision in 29 C.F.R., § 1614.407(a) allowing a

claimant to file a civil action within ninety days of receiving notice of a final action

from his/her employing agency.  The Plaintiff did so without taking any action to

pursue his EEOC appeal, beyond filing his notice of appeal, which he later withdrew.

In addition, it is important to note that Jones v. Ashcroft, 321 F.Supp. 2d 1 (D.D.C. 2004) and Martini v. Federal National Mortgage Association, 178 F.3d 1336 (U.S. App. D.C. 1999) are District of Columbia decisions and are not binding on this Court. Moreover, the United States Court of Appeals for the District of Columbia, in Martini v. Federal National Mortgage Association, 178 F.3d 1336, 1347 (U.S. App. D.C. 1999), acknowledged that its decision that claimants must wait one hundred eighty days after filing charges with the EEOC before filing suit in federal court "runs counter to that reached by [its] sister circuits."

Finally, it should be noted that the First Circuit Court of Appeals decision cited by the Defendant, Jensen v. Frank, 912 F.2d 517 (1st Cir. 1990), does not address the time periods for filing appeals and civil actions; it addresses the statute of limitations for filing an initial claim with a federal agency. It fails to provide guidance for a determination regarding the timeliness of the Plaintiff's filing of this civil action.

**III.B.   The Plaintiff Was Subjected to Retaliation of a Continuing Nature For Which He is Entitled to Relief.**

**III.B.1.     The Plaintiff Has Stated a Claim for Retaliation.**

To state a claim for retaliation, a Plaintiff must assert that (a) he engaged in activity that is protected under Title VII; (b) he experienced an adverse employment action; and (c) a causal connection exists between the protected

activity and the adverse employment action.  Gu v. Boston Police Department,
312 F.3d 6, 13-14 (1st Cir. 2002).

Reporting discrimination, like the Plaintiff did with his 1998 complaint to
the EEO counselor, is a protected activity under Title VII.  See Dressler v. Daniel,
315 F.3d 75, 78 (1st Cir. 2003) (stating that a claimant's actions in reporting
sexual harassment or initiating a charge of sexual harassment is a protected
activity under Title VII); See also Calero-Cerezo v. United States Department of
Justice, 355 F.3d 6, 25 (1st Cir. 2004) (stating that a federal employee's
complaints to her agency's EEO office were protected activities under Title VII).
In fact, the Defendant has acknowledged, on page ten of its Memorandum in
Support of its Motion to Dismiss, that it is not disputing that the Plaintiff engaged
in protected activity when he complained to the EEO counselor in 1998.

As a result of his protected activity in lodging a complaint with the EEO
counselor, the Plaintiff was subjected to various adverse employment actions.
An adverse employment action is one that materially changes the conditions of a
plaintiff's employment.  Gu, 312 F.3d at 14.  Whether an action is a materially
adverse employment action, sufficient to support a claim for retaliation, must be
determined with a case-specific inquiry.  Blackie v. State of Maine, 75 F.3d 716,
725 (1st Cir. 1996).  Demotions, disadvantageous transfers or assignments,
refusals to promote, unwarranted negative job evaluations, toleration of
harassment by other employees, and decreased supervisory authority are all
examples of actions that may constitute adverse employment actions.  Id.

In addition, a retaliatory hostile work environment may be actionable if the alleged harassment is severe or pervasive.  Che v. Massachusetts Bay Transportation Authority, 342 F.3d 31, 40 (2003).  A determination of whether a work environment is sufficiently hostile or abusive must be made by "looking at all the circumstances."  Faragher v. City of Boca Raton, 524 U.S. 775, 787-788, 118 S. Ct. 2275, 2283, 141 L.Ed.32d 662 (1998).  The accumulated effect of incidents over time, like the undue scrutiny and hostility which the Plaintiff asserts he has been subjected to since 1998, can create a hostile work environment for an employee.  See Koseris v. State of Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (stating that "the accumulated effect of incidents can amount to a hostile work environment over time").  Because the Defendant in this matter has filed a motion to dismiss, without filing an answer or engaging in discovery, "all the circumstances" are not known by the parties and all "reasonable inferences" regarding the circumstances must be made in favor of the Plaintiff, supporting his claim that (a) Robert Hallett's and Robert Watts' false accusations against him, (b) the undue scrutiny and unfair criticism that he received, (c) his involuntary transfers to positions outside of his chosen field, and (d) Mr. Watts' hostility toward him created a hostile and offensive work environment for him.  See Watterson, 987 F.2d at 3.

In his complaint, the Plaintiff asserts that he has been subjected to several adverse employment actions like those listed above, including an unwarranted written counseling, a hostile and offensive work environment, lost professional opportunities, lost opportunities for advancement, lost wages, and undesirable

job transfers.  The Defendant has acknowledged, on page ten of its Memorandum in Support of its Motion to Dismiss, that it is not disputing that the December 6, 2001 written counseling to the Plaintiff was an adverse employment action.  Taking the Plaintiff's factual assertions as true and making all reasonable inferences in favor of the Plaintiff, the Plaintiff's disadvantageous transfers, hostile working environment under Robert Hallett and Robert Watts, and lost professional opportunities, as pleaded by the Plaintiff, were also adverse employment actions to which the Plaintiff was subjected.  See Watterson, 987 F.2d at 3 (stating that a court must accept the allegations of the plaintiff's complaint as true and "make all reasonable inferences in favor of the plaintiff[ ]").

The Plaintiff has sufficiently plead to a causal connection between his protected activity in lodging a complaint with the EEO counselor and the adverse employment actions to which he was subjected, to survive a motion to dismiss. The burden of alleging a causal connection between a plaintiff's protected activity and the adverse employment actions taken against him/her "is not an onerous one."  Calero-Cerezo v. United States Department of Justice, 355 F. 3d 6, 26 (1st Cir. 2004).  One may establish a causal connection by demonstrating sufficient temporal proximity between the protected conduct and the employment actions. Id. at 25.  The Plaintiff has asserted a claim of retaliatory harassment beginning with (a) undue criticism and scrutiny after he filed his complaint in 1998, which resulted in (b) false accusations against him, which led to (c) two disadvantageous job transfers, which resulted in (d) a hostile work environment working for Robert Hallet's wife and Robert Watts, and which led to (e)

15

unwarranted disciplinary action against the Plaintiff in the form of a written counseling.  In asserting his claim, the Plaintiff established a close temporal relationship between his 1998 EEO complaint and the series of adverse employment actions to which he was subjected, as the Plaintiff has pled that the actions were part of a continuing pattern of conduct that began with his 1998 EEO complaint.

III.B.2. **The Plaintiff's Retaliation Claim Was Timely Filed, As a Continuing Violation Claim, As to All Acts Addressed Therein.**

A federal employee must file his/her Title VII complaint with an EEO counselor within forty-five days of the discriminatory conduct.  29 C.F.R., § 1614.105(a)(1), (2).  The Plaintiff met this deadline as to the December 6, 2001 written counseling to him initiated by Robert Watts, when he lodged a complaint with an EEO counselor on December 7, 2001, the day after the written counseling was issued.

As the written counseling was part of a continuing practice of discrimination against the Plaintiff based on Robert Watts' and Robert Hallett's discriminatory animus against the Plaintiff as a result of his 1998 EEO complaint, the Plaintiff's December 7, 2001 complaint is timely as to all of the retaliatory actions to which the Complainant was subjected between 1999 and early December, 2001.

Title VII provides for an equitable exception to the deadline for filing Title VII claims for "continuing violations" of Title VII, when the discriminatory conduct is ongoing in nature.  Crowley v. L.L. Bean, Inc., 303 F.3d 387, 405 (1st Cir.

2002).  If a court determines that (a) the subject matter of the discriminatory acts are sufficiently similar so that there is a substantial relationship between the acts for which the plaintiff's charge of discrimination was timely filed and any acts for which the plaintiff's charge of discrimination was untimely filed; and (b) the acts are not isolated and discrete, but, rather, occur with frequency, repetitively or continuously, a plaintiff may have his/her untimely filed claims heard under the theory that they are part of a continuing violation, together with acts for which he/she timely filed his/her charge of discrimination.  See Brissette v. Franklin County Sheriff's Office, 235 F. Supp.2d 63, 86-87 (D. Mass. 2003).

The adverse employment actions taken against the Plaintiff were part of a continuing scheme of retaliation arising from the Defendant's same discriminatory animus against the Plaintiff for filing his 1998 EEO claim.  The scheme spanned from 1998 until December, 2001 and must be considered in full when analyzing the Plaintiff's claim of retaliation and the connection between his protected activity and the adverse actions taken against him.  Immediately after engaging in the protected EEO activity, the Plaintiff experienced a change in his employment conditions.  His supervisor, Robert Hallett, began to subject him to undue scrutiny and unfair criticism.  The undue scrutiny and unfair criticism were the first steps of a scheme put in place by Robert Hallett to retaliate against the Plaintiff for complaining regarding his working conditions and limited promotional opportunities under Robert Hallett to an EEO counselor.  Robert Hallett falsely accused the Plaintiff of patient abuse, removed him from a position in his chosen field, involuntarily transferred him to a position in a field in which he had no

experience, and assigned him to work under the supervision of a former peer whom Robert Hallett knew was hostile to the Plaintiff.  This last act of retaliation exposed the Plaintiff to further retaliation from his new supervisor, which continued under the oversight of Robert Hallett, who was the Plaintiff's new supervisor's superior.

Working under the supervision of a hostile supervisor in a field in which he had no experience, the Plaintiff was the subject of continuing retaliation instigated by Robert Hallett.  The written counseling that his supervisor issued in connection with the Plaintiff's medical work directly and proximately resulted from Robert Hallett's retaliation.  The Plaintiff would not have been working for Robert Watts, nor would he have been working in a medical position outside of his field of training, if Robert Hallett had not retaliated against him for his EEO activity.  This final act of retaliation made the Plaintiff aware that he was being set up for disciplinary action.  This realization caused the Plaintiff to make his December, 2001 EEO complaint.

The adverse actions to which the Plaintiff was subjected in this matter were part of a continuous scheme of retaliatory, harassing conduct.  When the Plaintiff was transferred to his health technician positions, he was placed in a continuously offensive environment, in which he was denied the opportunity to work in his chosen profession and was exposed to Mr. Watts' hostile conduct.  The Plaintiff's job transfers were not discrete events, like the job transfers that the Defendant references in its memorandum from Miller v. New Hampshire Department of Corrections, 296 F.32d 18 (1st Cir. 2002); they were the cause of

the Plaintiff's retaliatory, hostile work environment and part of an ongoing scheme of retaliatory, conduct.  <u>See</u> <u>Miller v. New Hampshire Department of Corrections</u>, 296 F.32d 18, 22 (1st Cir. 2002) (holding that a plaintiff's job transfer was a discrete event for which his complaint was untimely filed, when, after a few months of retaliatory conduct after his transfer, he was "treated very well" for over two years before he was subjected to the additional retaliatory conduct, for which his complaint was timely filed).  While discrete acts of retaliation must each be filed within the statutory time frame, acts, like those in the present matter, that together constitute a single unlawful employment practice, like a hostile environment scheme, will be timely filed if one act in the scheme is timely filed, within the statutory time frame.   <u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075, 153 L.Ed.2d 106 (2002).

## IV.    Conclusion

The Plaintiff's claims must survive the Defendant's motion to dismiss, as the allegations of the Plaintiff's complaint, and all reasonable inferences that may be drawn from them, show that (a) the Plaintiff timely filed his civil action during the ninety day period provided for under 29 C.F.R., § 1614.407(a) and (b) the Plaintiff was subjected to a continuing violation of the anti-retaliation provisions of Title VII, beginning with (a) undue criticism and scrutiny after he filed his complaint in 1998, which resulted in (b) false accusations against him, which led to (c) two disadvantageous job transfers, which resulted in (d) a hostile work environment working for Robert Hallet's wife and Robert Watts, and which led to (e) unwarranted disciplinary action against the Plaintiff in the form of a written

counseling issued one day before the Plaintiff filed his EEO complaint.  Taken together, the Defendant's conduct has created a hostile and offensive work environment for the Plaintiff, who is entitled to have such conduct reviewed in its entirety as a continuing violation of Title VII.

## <u>REQUEST FOR ORAL ARGUMENT</u>

**The Plaintiff respectfully requests a hearing before the Court to present an oral argument in support of its opposition to the Defendant's Motion.**

Respectfully Submitted,
HARVEY STEWART,
By his Attorney,


/s/ Scott W. Lang
Scott W. Lang, Esquire  BBO #285720
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA  02740
(508) 992-1270

Dated:  October 19, 2004

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel certifies that on October 5, 2004, Assistant U.S. Attorney Barbara Healy Smith contacted my associate, Attorney Jennifer Davis, and they (a) conferred regarding the Defendant's motion to dismiss and the Plaintiff's opposition thereto and (b) attempted in good faith to resolve or narrow the matters at issue.

/s/ Scott W. Lang
Scott W. Lang, Esquire  BBO #285720
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA  02740
(508) 992-1270

Dated:  October 19, 2004