IN THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARVEY STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 04-11598-WGY |
| | ) |
| ANTHONY J. PRINCIPI, | ) |
| SECRETARY U.S. DEPARTMENT | ) |
| OF VETERAN AFFAIRS, | ) |
| | ) |
| Defendant. | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

In his Opposition to defendant's Motion to Dismiss, plaintiff argues that the alleged adverse employment actions – taken by at least three different supervisors sporadically over a period of 31 months – were all part of a continuous "scheme," or created a hostile environment. Plaintiff's argument fails.[1] First, it ignores the distinction between discrete employment actions and hostile work environment. The equitable doctrine of continuing violation does not excuse plaintiff's failure to promptly initiate an administrative EEO action when he was transferred in 1999, or allow plaintiff to sit on his rights for more than two years, until after being disciplined by an entirely different supervisor. Second, plaintiff's allegations are neither sufficiently related nor sufficiently severe to state a claim for hostile work environment. Finally, plaintiff cannot prove a causal connection between the 1998 counselor visit and the December 2001 discipline.

**I.      Any Discrete Act that Occurred Prior to October 2001, is Time-Barred.**

In his Opposition, plaintiff fails to appreciate the distinction the Supreme Court has drawn between discrimination based on discrete acts and that based on a continuing violation or

---

[1]Having learned that plaintiff's appeal to the EEOC is not pending, defendant concedes that plaintiff properly filed a Complaint and withdrew or asked that the appeal be withdrawn.

hostile work environment. Both the Supreme Court and First Circuit have expressly recognized a limitation on the doctrine of continuing violation, making clear that it cannot save claims of plaintiffs who sit on their rights when subject to unambiguous adverse personnel actions. Rather, such acts are governed by the deadlines designed to prevent agencies from defending against stale claims, see, e.g., Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980), and, under circumstances like the present, a plaintiff who does not file a charge based on a discrete act within the statutory period "lose[s] the ability to recover for it." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). See Rivera v. Puerto Rico Aqueduct and Sewers Auth., 331 F.3d 183, 188-89 (1st Cir. 2003) (holding that where EEO claim was filed in September 1997, a July 1996, transfer was a time-barred discrete act that was not actionable).

Since Morgan, "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113 (emphasis added). That is because each discrete act "starts a new clock for filing charges and the clock starts on the date that the act occurred." Lucas v. Chicago Transit Auth., 367 F.3d 714, 723 (7th Cir. 2004) (emphasis added). Discrete acts are "easy to identify" because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Morgan, 536 U.S. at 114. According to the Supreme Court, discrete acts that fall within the statutory time period "do not make timely acts that fall outside the time period," id. at 112, and if there are related discrete acts that are independently discriminatory, an employee must timely file charges for those. Id. at 113. By contrast, a hostile work environment involves "repeated conduct" that "may not be actionable on its own." Lucas, 367 F.3d at 724 (citing Morgan, 536 U.S. at 115). Here, the alleged adverse

employment actions that occurred prior to 2001 that are discrete acts (the two transfers, and the allegation of patient abuse) are simply not actionable in this lawsuit.

Plaintiff's argument as to why the Court should consider the untimely alleged adverse employment actions is that the transfers are not discrete acts. Plaintiff bases his argument on an incorrect reading of Miller v. N.H. Dep't of Corr., 296 F.3d 18. In Miller, the court decided that the transfer, negative evaluation and letter or warning were untimely discrete acts based not on the factual circumstances, but instead on the clear line drawn by the Supreme Court. Miller, 296 F.3d 18, 22 (1st Cir. 2002) (a transfer is a discrete act). Under the same precedent, this Court should find that the two transfers and "false allegation of patient abuse" are time barred.

## II.    The Allegations Fail to Describe a Hostile Work Environment.

Based on Morgan and Miller, it is clear that plaintiff's allegations of two transfers and the 1999 "false accusation" of patient abuse are discrete acts and thus time-barred. Plaintiff argues that he should be allowed to reach back to events that occurred before October 2001, because those acts are part of an overall hostile work environment. To allow him to do so on these facts would extinguish the distinction between the two theories of recovery; every plaintiff would be able to proceed on every untimely allegation – making the deadlines in Title VII irrelevant. In any event, plaintiff's hostile environment theory fails, since the alleged untimely acts are unrelated to the December 6, 2001, "written counseling" and are neither severe nor pervasive.

As an initial matter, the Court must determine whether the acts about which plaintiff complains are part of the "same actionable hostile work environment practice," and if so, whether any single act falls within the statutory time period. Morgan, 536 U.S. at 120. That is, in order for a hostile work environment to be actionable, at least one of the acts must have

occurred within the statutory time period (here, after October 23, 2001).  Id.  That does not end the inquiry, however, because Morgan "does not stand for the proposition that any timely allegation can properly anchor" any untimely allegation.  Paquin v. MBNA Mktg. Sys., Inc., 233 F. Supp. 2d 58, 63 (D. Me. 2002).  Rather, a plaintiff's untimely allegations may be considered for the purposes of determining liability only if an act contributing to the hostile environment claim occurs within the filing period – that is, if the timely acts "are part of the same actionable hostile work environment."  Lucas, 367 F.3d at 724 (citing Morgan, 536 U.S. at 120).  Here, the "undue scrutiny" and "unfair criticism" of Robert Hallett, who ceased to be plaintiff's supervisor in 1999, Pl.'s Compl., ¶ 14, and his assigning of Roberts Watts as plaintiff's supervisor, also in 1999, are unrelated to the disciplinary action, by a third supervisor, more than two years later.  "Acts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations."  Lucas, 367 F.3d at 727; citing Tinner v. United Ins. Co. of Am., 308 F.3d 697, 708 (7th Cir. 2002).  In Lucas, as here, the supervisor who was accused of the discrimination was no longer plaintiff's supervisor and had not been for some time.  Lucas, 367 F.3d at 727 (no hostile work environment where three years have passed and plaintiff's supervisor had changed).  Even if considered related, however, the total allegations here fall far short of describing a hostile work environment.

By definition, a hostile work environment "involves repeated conduct." Morgan, 536 U.S. at 115.  The allegations also must be viewed objectively; that is, if the conduct is not so severe or pervasive that a reasonable person would find it hostile or abusive, no Title VII right is implicated.  See Luciano v. Coca-Cola Enters., Inc., 307 F. Supp. 2d 308 (D. Mass. 2004).

A hostile work environment is not created by a "mere offensive utterance" or "simple teasing, offhand comments, and isolated incidents." Kosereis v. State of R.I., 331 F.3d 207, 216 (1st Cir. 2003). Rather, actionable harassment must be based on conduct that is so severe and pervasive that it alters the terms or conditions of employment. Pa. State Police v. Suders, __ U.S. __, 124 S. Ct. 2342 (2004); Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); Conto v. Concord Hosp., Inc., 265 F.3d 79, 82-83 (1st Cir. 2001); Derosiers v. Great Atl. & Pac. Tea Co., 885 F. Supp. 308, 313 (D. Mass. 1995). Whether an environment is hostile or abusive is determined by looking at all the circumstances, including the frequency and severity of the alleged discriminatory conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 40 (1st Cir. 2003); Conto, 265 F.3d at 82-83. Here, plaintiff's first allegation is that his supervisor Robert Hallet subjected plaintiff to "undue scrutiny" and "unfair criticism" following plaintiff's visit to an EEO counselor in 1998.[2] Nine months later, Hallett allegedly made a false accusation against plaintiff, and then transferred plaintiff, after which Hallett was no longer plaintiff's supervisor. Plaintiff alleges that Hallett assigned plaintiff to work under Robert Watts in July 1999,[3] even though Hallett knew Watts and plaintiff had "difficulty" working together. Despite Watts alleged hostility towards plaintiff, however, there are no allegations in the Complaint of adverse employment

---

[2] Any incidents of "undue scrutiny" and "unfair criticism" by Hallett would have ceased in April of 1999, when plaintiff no longer worked under Hallett's supervision. Pl.'s Compl. ¶ 14.

[3] Interestingly, plaintiff does not allege that Hallett assigned him to the position where Watts would be his supervisor, but that "the Department of Veteran Affairs" made that transfer. Pl.'s Compl., ¶ 31. For purpose of the Motion to Dismiss, however, defendant assumes, as must the Court, that even though Hallett was no longer plaintiff's supervisor, and did not transfer plaintiff the second time, he somehow had authority to arrange for Watts to supervise plaintiff. Id., ¶ 37.

actions by Watts for two and a half years – from July 1999, through all of 2000 and 2001. As a matter of law, two and half years of apparently being able to work in the new position does not constitute harassment so severe and pervasive as to alter plaintiff's working conditions.[4] In Lucas, the court credits case law holding that a two-year gap between alleged discriminatory acts could not support a continuing violation. Lucas, 367 F.3d at 727; citing Tinner, 308 F.3d at 708-709. Moreover, here each of plaintiff's allegations involve a different supervisor: Hallet allegedly placed "undue scrutiny" on plaintiff; Robert Watts had a history of "hostility" towards plaintiff; and Dr. Swett issued the written counseling, two and a half years after Watts became plaintiff's supervisor. With so much time between each incident and three different supervisors, plaintiff's allegations are not part of a "single course of conduct," nor are they objectively severe and pervasive, and so the Complaint must be dismissed.

### III. Plaintiff Cannot Establish a Causal Connection Between the Single Actionable Event in December 6, 2001, and his 1998 visit to an EEO Counselor.

Plaintiff's arguments do not overcome ample precedent that without temporal proximity to the protected activity, adverse personnel actions occurring much later are not causally related. Plaintiff instead urges a theory that anything that happened to him after the 1998 counselor visit must be causally related, regardless of how many months, years and supervisors have passed. On the contrary, the First Circuit recently reiterated that the temporal proximity must be "very close" in order to establish causal connection. Calero-Cerezo v. U.S.D.O.J., 355 F.3d 6, 25 (1st Cir. 2004). Courts are unwilling to find a causal connection when three to four months have

---

[4] Assuming the Court can consider the attachments to plaintiff's Opposition, there was one alleged incident in that two and a half year period: in January 2000, another employee threatened to "write up" and fire plaintiff, apparently directed "by R. Watts." See Pl.'s Ex. 1 to Opp'n. Almost two years passed between the January 2000, incident and when plaintiff received his written counseling.

elapsed, let alone years.  Id.  The First Circuit has held that no reasonable trier of fact could find that a two year period could satisfy a causal connection.  Dressler v Daniel, 315 F.3d 75, 80 (1st Cir. 2003) (affirming summary judgment for defendant).  If two years cannot demonstrate a causal connection, then plaintiff's allegation of a three-year interim between engaging in protected activity in 1998 and the 2001 written counseling by a different supervisor, cannot satisfy the causal connection requirement.  Plaintiff therefore has not stated a claim for reprisal for the single timely allegation.

## CONCLUSION

Defendant's motion to dismiss should be granted because plaintiff cannot prove any set of facts entitling him to relief.  Any claim based on the untimely discrete acts is time-barred and, contrary to plaintiff's assertion in his Opposition, fits neither the continuing violation nor hostile work environment exceptions to the statute of limitations.  Plaintiff cannot establish a causal connection between the protected activity in 1998 and the only timely adverse employment action more than three years later.

Respectfully submitted,

By his attorney,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/Barbara Healy Smith
Barbara Healy Smith
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3263