IN THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HARVEY STEWART,
Plaintiff,

v.

R. JAMES NICHOLSON,
SECRETARY U.S. DEPARTMENT
OF VETERANS AFFAIRS,
Defendant.

CASE NO.: 04-11598-WGY

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant is entitled to summary judgment because the undisputed facts show that defendant did not take any adverse employment action against plaintiff within the meaning of Title VII when it issued a "written counseling" to plaintiff on December 5, 2001. By the express terms of the union contract, the counseling is not "discipline." Nor were there any negative consequences from the counseling. Moreover, defendant cannot establish a causal relationship between his visit to an EEO counselor in July 1998, and the letter of counseling from a different supervisor in a different unit three and a half years later. Since there is no timely allegation to anchor a claim of "retaliatory harassment,"defendant is entitled to judgment.

**RULE 56.1 CONCISE STATEMENT**
**OF THE UNDISPUTED MATERIAL FACTS OF RECORD**

1. Plaintiff Harvey Stewart has been employed by the United States Department of Veterans Affair ("VA") at Brockton VA Medical Center since November 1994. Compl. ¶ 11.

2. Plaintiff's first position with the VA was as a case manager in the REACH program, where he worked from November 1994 until April 1999. Compl. ¶ 14. Plaintiff's supervisor in that position was Robert Hallett ("Hallett"). Id.

3. In July 1998, plaintiff "approached" an EEO counselor to "complain about his working conditions and his limited opportunity" for career advancement. Id. at ¶ 16.

4. In April of 1999, plaintiff was transferred to the Gastroenterology Unit. Compl. ¶ 24.

5. In July 1999 plaintiff was transferred to the PATH Program as a Health Technician/ Advocate. Id. ¶ 31.

6. Plaintiff has worked at the Brockton VA Medical Center within the PATH program since the summer of 1999. Compl. ¶ 35. Plaintiff's initial supervisor in the PATH program was Dr. Swett.[1] Excerpts from Transcript of Deposition of Harvey Stewart ("Stewart Dep."), Ex.1 hereto at 24:25-25:9.

7. Since August of 1999, when plaintiff started as an advocate in the PATH program, and today, plaintiff's salary has increased on a regular basis according to step raises and COLAS. Stewart Dep., Ex. 1 at 15:24-16:05. Plaintiff's step level within the grade has also increased to his current grade of GS-6.7 (a 6 Step 7). Id. at 16:6-16:16.

8. Plaintiff alleges that six things that occurred over the following three and a half years constitute reprisal for his conversation with the EEO counselor in 1998. First, at some unspecified time after Hallett learned of plaintiff's informal "communication" with an EEO counselor, plaintiff was subjected to unspecified "undue scrutiny and unfair criticism." Compl. at ¶¶ 20-21. Second, in April 1999, ten months after the visit to the EEO counselor, Hallett allegedly falsely accused plaintiff of patient abuse. Id. at ¶ 22. Third, on April 13, 1999, plaintiff was involuntarily transferred by Hallett to a position as a Health Technician in the

---

[1] While Plaintiff erroneously refers to Dr. Swett as "Dr. Charles Swett" in the Complaint, Dr. Swett's first name is Chester. Ex. 1 at 25.

Gastrointestinal Unit. Id. at ¶ 24. Fourth, in July 1999, one year after the EEO visit, plaintiff was involuntary transferred again to his current position at the PATH Program as a Health Technician/Advocate position. Id. at ¶ 31. Fifth, Hallet assigned Robert Watts ("Watts"), as plaintiff's direct supervisor, when Hallett purportedly knew "that Robert Watts and the Plaintiff had experienced difficulty in working together on a previous assignment" and that Watts "had expressed hostility" toward plaintiff. Id. at ¶¶ 38-39.

9. Finally, on December 5, 2001, three and a half years after the EEO visit, and nearly two and a half years after plaintiff's transfer to the PATH Program, Dr. Swett issued a memorandum constituting a so-called "written counseling" to plaintiff. Id. at ¶ 41. See December 5, 2001 Memorandum, attached hereto as Exhibit 2. That memorandum stated that plaintiff was required by his position description to take and post monthly vital signs in monthly summaries, but that plaintiff was not doing so. Ex. 2 Also in that memorandum, plaintiff was informed that any refusal to take vital signs or post monthly vital signs in his advocate summaries would "be met with disciplinary action." Id.

10. Dr. Swett was not aware that plaintiff had visited an EEO counselor in 1998. See Affidavit, transcript of examination of Chester P. Swett, Ex. 3 hereto, at p. 10:6-10:10.

11. A written counseling is used by supervisors at the VA to encourage employees to modify or improve their performance, and is meant to be constructive, not adverse. It is not a form of disciplinary action, and is not defined as such in the Master Agreement between the VA and the National Association of Government Employees ("Master Agreement"). Affidavit of William Warfield ("Warfield Aff."), filed herewith, at ¶¶ 14. A written counseling is not included in the Master Agreement as an action constituting discipline. See excerpt from Master

Agreement, Ex. 4 hereto, at Article 45, Section 1.

12. Subsequently, plaintiff filed a formal grievance about the written counseling with the Union, and ultimately there was a determination that there was no basis for the written counseling. Stewart Dep., Ex. 1 at 58:4-58:7, 89:9-89:16. No disciplinary action was taken against the plaintiff. Ex. 1 at 58:11. Plaintiff's union representative assured plaintiff the written counseling would be taken out and would "no longer exist" in plaintiff's personnel file. Ex. 1 88:23-89:8. See "MailMan message" for Harvey Stewart, June 2002, attached as Exhibit 5.

**PROCEDURAL BACKGROUND**

On December 7, 2001, plaintiff initiated an informal administrative EEO claim. The December 5, 2001, written counseling was the only alleged act of reprisal occurring within the 45 days preceding the administrative claim. After this Complaint was filed, defendant moved to dismiss, arguing, *inter alia*, that the years-old acts were time-barred for plaintiff's failure to initiate an administrative claim within the strict 45-day period provided under Title VII and its implementing regulations. Docket No. 6. Plaintiff replied that there was a "continuing violation" and "retaliatory harassment" that permitted him to pursue his claims. Docket No. 9 at 15-18 ("Opposition"). Defendant argued that everything except the December 1991 written counseling, including the April and July 1999 transfers, were discrete unambiguous personnel actions, for which plaintiff was required to initiate a charge within the statutory period or "lose the ability to recover for it." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). At a November 16, 2004, hearing on defendant's Motion to Dismiss, this Court ruled that the earlier acts of alleged reprisal were time-barred, but that plaintiff could proceed to discovery with a claim of retaliatory harassment only, anchored by the single action occurring

within the 45-day period for initiating contact with an EEO counselor: the written counseling on December 5, 2001.

## ARGUMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate in this case because the material facts are not and cannot be disputed. Plaintiff cannot survive summary judgment because the one action of which he timely complained -- a letter of written counseling -- does not constitute an adverse action for purposes of Title VII, and in any event plaintiff cannot show a causal nexus between the counseling and his visit to EEO more than three years earlier. Where the party opposing summary judgment has not presented specific competent proof of a genuine issue of material fact, summary judgment must be granted. Gorski v. New Hampshire Dep't of Corrections, 290 F.3d 466, 475 (1st Cir. 2002); Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

### A. Defendant is Entitled to Judgment Because the Single Timely Act of Alleged Reprisal - A Written Counseling - Was Not an Adverse Personnel Action.

The written counseling plaintiff received on December 5, 2001, cannot, as a matter of law, constitute retaliation for his 1998 communication with an EEO counselor that would support his claim under Title VII because it is not an adverse personnel action. As Plaintiff acknowledged in his Opposition, at 11-12, in order to sustain a claim of retaliation under Title VII, he must show that: "(1) [he] engaged in protected conduct under Title VII; (2) [he] experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir.

2002)(citations omitted). As this Court recognized at the November 16, 2004, hearing, the only allegedly adverse employment action that can anchor plaintiff's claim of "retaliatory harassment" is the December 5, 2001, written counseling.

This written counseling, however, does not constitute an adverse employment action, and plaintiff therefore cannot establish the second prong of a prima facie retaliation claim. In order for an action to be adverse, it "must materially change the conditions of plaintiff's employ." Id. at 14 (citation omitted). For example, "an employer must either (1) take something of consequence from the employee, say, by discharging or demoting [him], reducing [his] salary, or divesting [him] of significant responsibilities, . . . or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering [him] for promotion after a particular period of service." Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996) (citations omitted). In other words, "[a]n employee suffers an adverse action when he suffers personal loss or harm with respect to 'a term, condition, or privilege of employment.'" Wyse v. Summers, 100 F. Supp. 2d 69, 77 (D. Mass. 2000) (quoting Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)).

As the First Circuit noted in Blackie, "[i]n a retaliation case, as in virtually any other employment discrimination case premised on disparate treatment, it is essential for the plaintiff to show that the employer took a materially adverse employment action against him." 75 F.3d at 725 (internal citations omitted). The written counseling at issue here wrought no change in plaintiff's employment, let alone a material change. Merely calling an action "retaliatory," or "hostile," or "adverse" does not make it an adverse action within the meaning of Title VII, if there are no tangible consequences. That is because "Title VII is not a 'general civility code.'"

Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998)). See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003). "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1238 (11th Cir. 1998) (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 2000). See Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998) (holding that increased amount of electronic messages to plaintiff, which contained onerous assignments and implicitly criticized his productivity, did not amount to adverse action). The determination of whether or not an action is materially adverse is an objective one, Marrero v. Goya of Puerto Rico, 304 F.3d 7, 23 (1st Cir. 2002), since "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Id. (citation omitted); see also Gu v. Boston Police Dep't, 312 F.3d at 14; Marrero v. Goya of Puerto Rico, 304 F.3d at 23. See LaValley v. Quebecor World Book Servs. LLC., 315 F. Supp. 2d 136, 146-47 (D. Mass. 2004) (examining alleged actions by employer for whether they "rose to the level of adverse employment action," and stating that federal law suggests neither yelling by employer, reprimands, interference in plaintiff's conversations, nor placing plaintiff at far end of building constituted adverse actions).

Examples of adverse employment actions are "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Hernandez-Torres v. Intercontinental Trading, 158 F.3d at 47 (1st Cir. 1998) (citations omitted); see Marrero v. Goya of Puerto Rico, 304 F.3d at 23; Gu v.

Boston Police Dep't, 312 F.3d at 14. Here, there were no tangible consequences from the written counseling. It is undisputed that following the written counseling defendant did not discharge or demote plaintiff, reduce his salary, or divest him of significant responsibilities. Plaintiff acknowledged that from August 1999, when plaintiff started in the PATH program, until today, his grade, step level and salary have not been reduced. Ex. 1 at 5-16. Since the December 5, 2001, written counseling, plaintiff's title has remained the same, and his salary has increased through step and cost of living increases. Id. Since no negative consequences flowed from the written counseling, it cannot constitute an adverse employment action for purposes of Title VII.

A "written counseling" simply does not rise to the level of an adverse employment action as defined in Blackie. The issuance of the written counseling did not take something of consequence from plaintiff or withhold from him an accouterment of the employment relationship. This is because the written counseling is not itself discipline, or even an evaluation. Rather, as is clear from the December 6 memorandum itself, the written counseling is just that – a counseling of the plaintiff that an employment deficiency has been identified and could "be met with disciplinary action" if not corrected. Ex. 2. In short, a written counseling is merely a warning, one that gives an employee the opportunity to *avoid* disciplinary action. In his deposition, plaintiff acknowledged that no disciplinary action flowed from the written counseling. Stewart Dep., Ex. 1, at 58. As attested to by William Warfield, Acting Human Resources Officer for the VA Boston Healthcare System, a so-called written counseling is used by supervisors within the VA to offer constructive encouragement for an employee to improve performance, and is not a form of disciplinary action. Warfield Aff. at ¶¶ 2-4.

Courts have found that actions like a written counseling, such as a letter of warning, reprimand, or a negative evaluation, do not amount to an adverse employment action. As the District of Columbia Circuit Court of Appeals recently observed in Harris v. Potter, "[c]ourts in this Circuit have held that formal letters of admonishment and disciplinary notices that have no effect on an employee's grade or salary level do not constitute adverse employment action." 310 F. Supp. 2d 18, 21 (D.D.C. 2004) (citing Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999). Similarly, the Third Circuit affirmed the district court's grant of summary judgment for defendant on a retaliation claim because the plaintiff did not establish that the reprimands he received effected a material change in the terms and conditions of employment since he "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location . . . did not have his hours or work changed or altered in any way, and [ ] he was not denied any pay raise or promotion as a result of these reprimands." Weston v. Pennsylvania, 251 F.3d 420, 431 (3rd Cir. 2001). In Kersting v. Wal-Mart Stores, Inc., the Seventh Circuit affirmed the district court's grant of summary judgment for defendant because the warnings given to plaintiff did not amount to a materially adverse employment action because they "did not result in, and were not accompanied by, any tangible job consequence." 250 F.3d 1109, 1118 (7th Cir. 2001). See also Tebo v. Potter, 345 F. Supp. 2d 61, 69 (D. Mass 2004) (granting summary judgment to defendant on retaliation claim because letter warning plaintiff that a failure to present medical documentation supporting his disability claim could result in his termination could "hardly be considered retaliatory"); Kane v. Krebser, 44 F. Supp. 2d 542, 547 (S.D.N.Y. 1999) (stating that plaintiff's retaliation claim based on a reprimand letter failed because plaintiff failed to allege that it created "a materially adverse change in the terms

and conditions of employment," noting that "a negative evaluation, standing alone, without any attempt to show how such an evaluation actually affected the plaintiff's terms and conditions of employment, cannot constitute adverse employment action" (internal quotation marks omitted)); Wyse v. Summers, 100 F. Supp. 2d 69, 77 (D. Mass. 2000) (holding that counseling for tardiness with no tangible job consequences attributable to the counseling statement, was not an adverse action but "the kind of *de minimis* employment hand-slap which falls beneath the radar screen of Title VII" (citations omitted)); Higgins v. TJX Cos. Inc., 331 F. Supp. 2d 3, 6-7 (D. Me. 2004) (concluding that employee's being counseled for relatively minor infractions, allegedly stared at by supervisor while she working, and threatened with reduction in hours was not adverse action).

The First Circuit likewise has held that warnings concerning employee performance are not adverse actions for purposes of retaliation claims. In Bishop v. Bell Atl. Corp., 299 F.3d 53, 59 (1st Cir. 2002), the plaintiff sued for retaliation under the Maine Human Rights Act because he was placed on an "action plan" after repeated problems with low productivity and warnings from his supervisors. The Bishop court reversed the district court's denial of defendant's motion for judgment as a matter of law and found that the employer's placement of the plaintiff on an action plan did not amount to an adverse employment action because "apparently routine application of pre-existing company policy to Bishop cannot be construed as [an] adverse employment action. . . ." Id. (citations omitted). Moreover, the court noted that "[g]iven the absence of evidence of meaningful consequence to Bishop, we cannot conclude that he satisfied his prima facie burden to show that he experienced an adverse employment action." Id. (internal citation omitted). Like an action plan, a written counseling notifies an employee of performance issues that can be corrected to avoid disciplinary action. Under the Master Agreement,

disciplinary actions do not include written counseling, but are defined as "letters of admonishment or reprimand and suspensions of 14 calendar days or less." See Master Agreement, Ex. 4. Thus, by definition, the written counseling was not discipline; it is more akin to the "action plan" in Bishop, and therefore is not materially adverse. Not only did no disciplinary action follow, but through the Union grievance procedure plaintiff succeeded in getting the counseling rescinded. See Ex. 5

Other courts are in accord that written counseling and warnings are not materially adverse actions under Title VII. In Davis v. Town of Lake Park, Fla., 245 F.3d 1232 (11th Cir. 2001), for example, the Eleventh Circuit affirmed the district court's granting of defendant's motion for judgment as a matter of law because plaintiff had not provided evidence that a counseling memorandum that expressed concern and criticism about plaintiff's performance constituted an adverse employment action, stating "[i]t is undisputed that [plaintiff] did not suffer any tangible consequence from this memo, in the form of a loss of pay or benefits or further discipline." Id. at 1240. The court noted that "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." Id. at 1241. In Merriweather v. Alabama Dep't of Pub. Safety, 17 F. Supp. 2d 1260 (M.D. Ala. 1998), aff'd 199 F.3d 443 (11th Cir. 1999), the court granted defendant's motion for summary judgment because the plaintiff had "not alleged that this written counseling has had any adverse impact on her employment," "produce[d] any evidence to support that she ha[d] been fired, demoted or denied any pay increase," or that "any of the terms of her employment [had] been adversely affected because of the counseling." 17 F.

Supp. 2d at 1275. In granting defendant's motion for summary judgment, the court in Ware v. Billington, 344 F. Supp. 2d 63 (D.D.C. 2004), stated that the counseling memorandum that the plaintiff received, "standing alone," did not amount to an adverse employment action. 344 F. Supp. 2d at 76. Likewise, the court in Harris v. Potter, 310 F. Supp. 2d 18 (D.D.C. 2004), granted defendant's motion to dismiss because the plaintiff failed to establish the existence of an adverse employment action, since plaintiff did not allege the Letter of Warning at issue "directly affected his job title, duties, salary, benefits or work hours in any material manner." Id. at 21.

In Sweeney v. West, the Seventh Circuit explained the rationale for the distinction between personnel actions that counsel, reprimand or warn an employee, and materially adverse actions that may undergird a Title VII claim. 149 F.3d 550, 557 (7th Cir. 1998). In Sweeney, the plaintiff complained that two counseling statements she received constituted retaliation for filing an EEO complaint three years earlier. Noting the counseling statements "admonish[ed] her to improve," but "stopped short of imposing any discipline" the court observed that "[a]t most" plaintiff had "documented instances in which she was unfairly reprimanded[.]"[2] Id. at 555-557. Without a tangible job consequence, however, the court "decline[d] to broaden the definition of adverse employment action" to include the reprimands, because:

> If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit; a simple statutory prohibition against retaliation would be turned into a bizarre measure of extra protection for employees who--though they might genuinely need counseling--at one point complained about their employer. We also would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so. Employees would be left in the dark as to how they could improve their work

[2] Thus, it is immaterial that plaintiff believed the counseling was unfounded and unfair, or even that it might have been issued in error. Without tangible consequences, the counseling does not rise to the level of an actionable adverse action.

> performance, and employers would be less able to establish the fact that poor performance, rather than some unlawful motivation, prompted a decision to fire, demote, etc.

149 F.3d 550, 556-557.

Like the plaintiff in Sweeney, plaintiff here attempts to use performance counseling as a means to anchor a claim of retaliation for having seen an EEO counselor three years earlier. Like the plaintiff in Sweeney, plaintiff cannot demonstrate that any tangible consequences that materially affected the conditions of his employment resulted from the written counseling. The written counseling was simply a warning letter and as such cannot form the basis of a Title VII retaliation claim. Given the total absence of any such "tangible consequences," the letter of written counseling simply cannot be considered an adverse employment action. Since the written counseling was the only timely allegation of alleged retaliation, there is thus no allegation to anchor plaintiff's claim of retaliatory harassment, and so the claim fails.

**B. Even Were the Court to Construe the Written Counseling as an Adverse Action, Defendant is Still Entitled to Judgment, as Plaintiff Cannot Show That an Action Taken More Than Three Years Later by a Different Supervisor Who Did Not Know Plaintiff Visited an EEO Counselor is Causally Connected.**

In any event, even were the Court to rule that the letter of counseling constituted an adverse personnel action, judgment should nonetheless enter for defendant because plaintiff also cannot establish the third prong of a prima facie case of retaliation: that of a causal link between the protected activity and the adverse action. Plaintiff cannot satisfy the third prong of a prima facie case because there is no causal nexus between the EEO visit in 1998 and the written counseling at the end of 2001. To establish a causal connection, the employee must show that the employer was aware of the protected activities and that the discharge followed the protected activities within such a period of time that the court can infer retaliatory motivation. Hochstadt v

Worcester Found. for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass. 1976); aff'd 545 F.2d 222 (1st Cir. 1976).

Here, plaintiff can show neither. First, Dr. Swett, who issued the written counseling, was not aware of plaintiff's visit to an EEO counselor in 1998. See Ex. 3. Second, three years and five months, plus at least two different supervisors, passed between the 1998 EEO visit and the December 2001 written counseling. Because "the inference of a causal connection becomes tenuous with the passage of time," Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir. 2003), the temporal proximity must be "very close" in order to establish a causal connection. Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citation omitted). See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). Courts are unwilling to find a causal connection when several months have elapsed, let alone years. Id. See Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (observing that nine-month period between protected conduct and adverse action suggested the absence of any causal connection); Gilbert v. Amerifee, L.L.C., 345 F. Supp. 2d 70, 73 (D. Mass. 2004) (four month period too long); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period too long); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four-month period too long); Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir.1992) (court doubtful causal connection is established when only evidence is notice of termination which occurred six months after reprimand for filing a complaint); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) (standing alone, four months between charge and adverse action weakens inference of retaliation). The First Circuit has held that no reasonable trier of fact could find that a two year period could satisfy a causal connection. Dressler v. Daniel, 315 F.3d at 80 (1st Cir. 2003) (affirming

summary judgment for defendant). See also, Lewis v. Gillette Co., 22 F.3d 22 (1st Cir. 1994) (where employee was discharged more than two years after protected activity, and more than a year after supervisor's ambiguous comment that may have related to plaintiff's complaint, employee failed to establish causal link because "there must be something more than a few weak inferences to create reasonable proof of a link between events so widely separated in time.") (citations omitted).

Plaintiff here cannot establish a causal connection between the protected activity in 1998 and the written counseling issued by a different supervisor more than three years later, and so judgment should enter for the defendant.

**CONCLUSION**

The written counseling was a method of identifying and notifying plaintiff of employment concerns. Since no negative job consequences followed from the memorandum, it cannot anchor plaintiff's claim of retaliatory harassment. Since it is the only timely act on which plaintiff's action can be based, and since in any event plaintiff cannot establish a nexus between the counseling and his visit to an EEO counselor more than three years earlier, judgment should enter for defendant and the Complaint should be dismissed.

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

Dated: 20 May 2005

By: /s/ Barbara Healy Smith
BARBARA HEALY SMITH
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3263